IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50204

Summary Calendar

_____


POST OAK SPECIAL UTILITY DISTRICT,

                              Plaintiff-Appellee,

v.

CITY OF COOLIDGE, TX,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(W-95-CV-62)
_____
September 13, 1996
Before KING, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

    The district court granted the motion for summary judgment

filed by Post Oak Special Utility District ("Post Oak") in its

suit against the City of Coolidge, Texas ("Coolidge") under 7

U.S.C. § 1926(b), holding that Post Oak has clearly "made

available" its water services to Coolidge, and Coolidge cannot

_____

    [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

now seek to supplant Post Oak as its supplier of potable water. Coolidge appeals. Finding no error, we affirm.

## I. BACKGROUND

Post Oak is a special utility district that provides water service to rural customers and is financed by loans from the Farmers Home Administration ("FmHA"), an agency of the federal government.[1] Since at least 1986, Coolidge has purchased water from Post Oak pursuant to a written contract between the parties. In 1992, Coolidge contracted with a third-party supplier, Bistone Municipal Supply District ("Bistone"), to supply a portion of the city's water needs. Coolidge claims it entered into this contract with Bistone because Coolidge found Post Oak's service inadequate.

Post Oak sought a declaratory judgment that Coolidge must purchase its water from Post Oak and an injunction prohibiting Coolidge from purchasing water from any other source, including Bistone. Post Oak contends that under 7 U.S.C. § 1926(b), Coolidge cannot purchase water from any other source during the term of Post Oak's indebtedness to the FmHA. Coolidge maintains that it is entitled to purchase water from alternative sources, including Bistone.

---

[1] The FmHA is now known as the Rural Utilities Service Administration. However, in this opinion, we will continue to refer to the agency as FmHA.

Both parties filed motions for summary judgment. The trial court granted Post Oak's motion and denied Coolidge's motion. Coolidge moved for relief from the operation of the order, and the court denied this motion as well. Coolidge has appealed the denial of both motions.

## II. DISCUSSION

### A. SUMMARY JUDGMENT

#### 1. Standard of Review

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance. *Texas Medical Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 156 (5th Cir. 1996). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Questions of statutory interpretation are questions of law and thus reviewed de novo. *Estate of Bonner v. United States*, 84 F.3d 196, 197 (5th Cir. 1996).

#### 2. Analysis

As in any case involving construction of a statute, we begin with the language of the statute itself. *See Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir. 1990). Section 1926(b) provides:

The *service provided or made available* through any such [rural water] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, *or by the granting of any private franchise for similar service within such area during the term of such [FmHA] loan* . . . .

7 U.S.C. § 1926(b) (emphasis added).

Courts have broadly interpreted this provision. As we recently stated, "The service area of a federally indebted water association is sacrosanct. Every federal court to have interpreted § 1926(b) has concluded that the statute should be liberally interpreted to protect FmHA-indebted rural water associations from municipal encroachment." *North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915 (5th Cir. 1996).

The legislative history of § 1926(b) indicates two congressional purposes for the legislation: "1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and 2) to safeguard the viability and financial security of such associations (and FmHA's loans) by protecting them from the expansion of nearby cities and towns." *City of Madison v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057, 1060 (5th Cir. 1987). The statute accomplishes these goals by forbidding encroachment on the rural water association's service area either "(1) through expansion of a municipal or other public water system or (2)

4

through introduction of new or expanded service by a private supplier." *CSL Utils., Inc. v. Jennings Water, Inc.*, 16 F.3d 130, 135 (7th Cir. 1993), *cert. denied*, 115 S. Ct. 65 (1994). Thus, the statute prevents another supplier, whether public or private, from being substituted for or displacing the service of a rural water association. *Id.*

The trial court granted summary judgment for Post Oak. The court concluded that because Post Oak had made its service available to Coolidge, Coolidge's contract with Bistone allowed Bistone to displace Post Oak's service and thus violates § 1926(b).[2] We agree with the district court's analysis.

In *North Shelby Water Co. v. Shelbyville Mun. Water & Sewer Comm'n*, 803 F. Supp. 15 (E.D. Ky. 1992), the court concluded that the rural water company made service available to certain residential subdivisions, even though it had never actually provided water, by installing water distribution lines near or within the subdivisions. *Id.* at 21-22. The court looked to state law and determined that, because of the proximity of the water lines to the subdivisions, state law obligated the rural water company to provide water to subdivision customers who applied for its service. *Id.* Thus, by incurring this obligation

---

[2] The district court also concluded that summary judgment for Post Oak was proper because, in addition to service "made available," Post Oak's service qualified as "service provided" under § 1926(b). We affirm only on the service "made available" prong of § 1926(b) and do not reach the "service provided" prong.

to provide water to the subdivisions, the water company "made available" its services to the subdivisions. *Id.* at 22; *see also Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir. 1988)(finding that rural water association "'made [service] available' by virtue of its line adjacent to the property and its responsibilities to applicants within its territory"), *cert. denied*, 490 U.S. 1067 (1989).

The case at bar is very similar to *Shelby*.  Post Oak and Coolidge are parties to a contract that obligates Coolidge to pay for at least 12 million gallons of water per year from Post Oak and obligates Post Oak to provide water to Coolidge "in such quantity as may be required by [Coolidge]."  Post Oak has "made available" to Coolidge the opportunity to purchase all the water it requires.  Coolidge's contract with Bistone cuts into the potential amount of water Post Oak can sell to Coolidge.  That violates a fundamental tenet of § 1926(b), which is to protect FmHA-indebted rural water associations from competition from other suppliers.  *See Bear Creek*, 816 F.2d at 1059; *Jennings Water, Inc. v. City of North Vernon*, 682 F. Supp. 421, 425 (S.D. Ind. 1988), *aff'd*, 895 F.2d 311 (7th Cir. 1989); *Rural Water Dist. #3 v. Owasso Utils. Auth.*, 530 F. Supp. 818, 823-24 (N.D. Okla. 1979).

Coolidge makes several arguments in response to this analysis.  First, Coolidge contends that because the contract

only obligates it to purchase 12 million gallons of water per year from Post Oak, the 12 million gallons constitutes the service available; therefore Coolidge can purchase additional quantities of water from other sources. Because Coolidge plans to continue purchasing the 12 million gallons annually from Post Oak, Coolidge argues that its contract with Bistone will not encroach upon Post Oak. However, Post Oak's undisputed summary judgment evidence shows, and Coolidge admits, that Coolidge purchased much more than 12 million gallons per year solely from Post Oak until after it entered into the new contract with Bistone. This shows that the contract allows Coolidge to purchase more than 12 million gallons per year. Therefore, Post Oak has "made available" services sufficient to supply all of Coolidge's water needs, and § 1926(b) prohibits Coolidge from encroaching on this by contracting with Bistone.[3]

Second, Coolidge maintains that § 1926(b) does not preclude it from maintaining a supplemental water supply for purposes other than household purposes. According to Coolidge, because it

---

[3] The district court ruled that the Post Oak-Coolidge contract is a requirements contract, obligating Coolidge to purchase and Post Oak to supply all of Coolidge's water requirements. Coolidge disputes this conclusion, claiming that the contract requires only that Coolidge purchase at least 12 million gallons of water annually. Whether the contract is a requirements contract is irrelevant to our analysis because the parties' prior conduct indicates that the contract at least *allows* Coolidge to purchase more than 12 million gallons annually. Thus, we do not reach the issue of whether the Post Oak-Coolidge contract is a requirements contract.

uses the water supplied by Bistone for fire, commercial, and industrial uses, and because § 1926(b) applies only to water for household use, § 1926(b) does not prohibit its agreement with Bistone. Coolidge cites no precedent for its proposition; instead, it relies on language from a Senate report discussing how the statute will benefit farmers and rural residents. This language does not preclude the interpretation that the statute could benefit other groups as well. The legislative history, as discussed above, makes abundantly clear that § 1926(b) is to be liberally construed to protect rural water associations from competition. The statute provides no exceptions. Indeed, we recently characterized the service area of an FmHA-indebted water association as "sacrosanct." *North Alamo*, 90 F.3d at 915. Furthermore, as the district court pointed out, Coolidge's own summary judgment proof indicates that the water provided from Bistone is used for residential purposes. Thus, Coolidge does not even live up to its own standard for an exception to § 1926(b).

Finally, Coolidge asserts an argument based on the speed with which Post Oak is paying its FmHA debt. Section 1926(b) protects rural water associations "during the term of such loan." Coolidge maintains that because "Post Oak has failed to diligently reduce" its debt, requiring Coolidge to purchase water from Post Oak during the term of the loan would make Coolidge

8

"infinitely bound" to Post Oak, which is surely not what Congress had in mind. Again, Coolidge asserts no authority for this proposition. Congress placed no maximum loan term in the statute. The statute is clear that it applies "during the term of such loan." Had Congress wanted a maximum loan term, it could have easily inserted one.[4]

## B. RELIEF FROM OPERATION OF ORDER

After the district court granted Post Oak's motion for summary judgment, Coolidge moved for relief from the operation of the order, requesting "1) consent of the Court to use Bistone water in emergency situations where Post Oak water is not available or is not fit for consumption; and 2) consent of the Court to purchase 50,000 gallons of water per week from Bistone to keep an emergency system viable." The court denied the motion.

Apparently, Coolidge is making an equitable argument, but Coolidge fails to identify the exact theory it bases its argument upon. Again, Coolidge cites no authority for its argument. At least one circuit court has refused to apply principles of equity to block application of the statute, arguing that the very strong public interest promoted by § 1926(b) is more important than

---

[4] Coolidge also argues that Post Oak's water service "is so inadequate it fails to constitute 'service provided.'" However, because we do not reach the "service provided" issue, *see supra* note 2, we need not address this argument.

individual equitable concerns. *See Jennings Water, Inc. v. City of North Vernon*, 895 F.2d 311, 316-17 (7th Cir. 1989) (equitable estoppel). We agree. We have previously refused "[t]o read a loophole into this absolute prohibition" provided by § 1926(b), *Bear Creek*, 816 F.2d at 1059, and we will not begin now.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court.